**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Jason P.,[1]

Plaintiff,

v.

Frank Bisignano, Commissioner of Social Security,

Defendant.

Case No. 2:25-cv-01942-BNW

**ORDER**

This case involves review of the Commissioner of Social Security's ("Commissioner") denial of Plaintiff Jason P.'s ("Plaintiff") application for benefits under Titles II and XVI of the Social Security Act. Plaintiff requests reversal of the Commissioner's decision and remand for further administrative proceedings. ECF No. 11 at 2. The Commissioner opposes and asks this Court to affirm the decision. ECF No. 13 at 1. Plaintiff filed a reply. ECF No. 14. For the reasons discussed below, this Court denies Plaintiff's request and affirms the Commissioner's decision.

## I. BACKGROUND

On May 10, 2023, Plaintiff applied for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act. AR 267-280. Plaintiff alleged an onset date of June 11, 2022. *Id.* at 276. The agency denied the claim initially on December 15, 2023. *Id.* at 118-129. The agency then denied the claim on reconsideration on April 1, 2024. *Id.* at 136-151. Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"), and the appointed ALJ conducted a hearing on December 3, 2024. *Id.* at 45-74. On December 18, 2024, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 18-40. The Appeals Council declined review, and the ALJ's decision became final on September 4, 2025. *Id.* at 1-6. Plaintiff timely filed this action for judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF No. 6.

[1] In the interest of privacy, this opinion only uses the first name and last initial of the non-governmental party.

## II. STANDARD OF REVIEW

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). This provision states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such a decision by civil action … brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews the Commissioner's decision de novo. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's factual findings are conclusive if substantial evidence supports them. 42 U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). The court may set aside these findings, however, if they are based on legal error or unsupported by substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The court must uphold findings which are supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Id.* Thus, the issue before the court is not whether the Commissioner could reasonably have reached a different

conclusion, but whether substantial evidence supports the final decision. The ALJ must also make specific findings, so the court need not speculate about their basis when reviewing the Commissioner's decision for substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Cursory findings that do not explain which evidence the ALJ accepted or rejected are insufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**a. Disability Evaluation Process**

A claimant seeking disability benefits bears the initial burden of proving disability. *Reddick*, 157 F.3d at 721. To meet this burden, he must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). He must also provide "specific medical evidence" to support his claim. 20 C.F.R. § 404.1514. If he establishes an inability to perform his prior work, the burden shifts to the Commissioner to show that the person can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

To determine whether a claimant is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Stout*, 454 F.3d at 1052. If the ALJ determines disability or non-disability at any step, the analysis ends there. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity ("SGA"). *Id.* at § 404.1520(a)(4)(i). If so, the ALJ will make a finding of non-disability. *Id.* If the claimant is not engaged in SGA, the analysis proceeds to step two.

At step two, the ALJ determines whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic activities. *Id.* at § 404.1520(a)(4)(ii). If not, the ALJ makes a finding of non-disability. *Id.* If the claimant has a severe medically determinable impairment or combination of impairments, the analysis proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at § 404.1520(a)(4)(iii). If so, and if the duration requirement is also met, the ALJ makes a finding of disability. *Id.* at § 404.1520(d). If the claimant's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, the analysis proceeds to step four.

Before step four, the ALJ must determine the claimant's residual functional capacity ("RFC")—a function-by-function assessment of his ability to perform physical and mental work activities on a sustained basis despite his impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. The ALJ must consider all relevant evidence, including the extent to which the claimant's symptoms are "consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or limiting effects of symptoms lack objective medical support, the ALJ must assess the claimant's credibility based on the entire record.

At step four, the ALJ determines whether the claimant's RFC allows him to perform past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW refers to the work the claimant has performed within the past five years. *Id.* at § 404.1560(b)(1)(i). The work must have lasted long enough for the claimant to learn the job and qualify as SGA. *Id.* If the claimant can perform his past work, the ALJ makes a finding of non-disability. *Id.* at § 404.1520(a)(4)(iv). If he cannot, or if he has no PRW, the analysis proceeds to step five.

At step five, the ALJ determines whether the claimant can perform any other work given his RFC, age, education, and work experience. *Id.* at § 404.1520(a)(5)(v). If so, the ALJ makes a finding of non-disability. *Id.* Although the claimant bears the ultimate burden of proving disability, a limited burden shifts to the Commissioner at this step to show that the claimant could perform other SGA that exists in the national economy. *Reddick*, 157 F.3d at 721; *see also* 20 C.F.R. § 404.1520(f).

/ / /

/ / /

**b. The ALJ Decision**

Here, the ALJ followed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in SGA since June 11, 2022. AR 24. At step two, the ALJ found the following severe impairments: degenerative joint disease of the bilateral shoulders with a left shoulder tear, left elbow epicondylitis, right thumb trigger finger, degenerative joint disease of the right foot, status post fibroma excision and scar revision/hallux valgus deformity, morbid obesity, cellulitis/atherosclerosis of native arteries of the extremities, degenerative disc disease of the cervical spine, degenerative disc disease of the thoracic spine, diabetes mellitus with peripheral neuropathy, and gastroesophageal reflux disease. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 25.

Before step four, the ALJ found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following restrictions: the Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours in an eight-hour workday for five days a week; sit for six hours in an eight-hour workday for five days a week; occasionally perform overhead reaching with the bilateral upper extremities; frequently push, pull, reach (in all other directions), handle, finger, and feel with the bilateral upper extremities; occasionally push and pull with the bilateral lower extremities; no exposure to hazards and cannot crawl or climb ladders, ropes, or scaffolds; occasionally balance, crouch, kneel, stoop, and climb ramps and stairs, as those are defined in the DOT/SCO; and occasional exposure to extreme cold temperatures and vibration, as defined in the SCO. *Id.* at 26-27.

At step four, the ALJ found that Plaintiff had no PRW. *Id.* at 31. At step five, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, such as document preparer (DOT 249.587-018), election clerk (DOT 205.367-030), and final assembler (DOT 713.687-018). *Id.* at 32. The ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. *Id.*

/ / /

## III. ANALYSIS

Plaintiff seeks reversal of the Commissioner's decision and remand for further administrative proceedings. Plaintiff argues that (1) the ALJ failed to differentiate Plaintiff's functional capacity before and after his two foot surgeries, and (2) the ALJ failed to state clear and convincing reasons for rejecting Plaintiff's testimony regarding his alleged symptoms and limitations. ECF No. 11 at 5, 7. The Commissioner responds that (1) substantial evidence supports the ALJ's finding that Plaintiff had one RFC during the adjudication period, and (2) the ALJ properly assessed Plaintiff's subjective allegations. ECF No. 13 at 4, 6.

### a. The ALJ's Singular RFC Finding is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by failing to separately assess the periods before and after Plaintiff's foot surgeries with distinct RFC findings. This Court disagrees.

Plaintiff cites to *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021) for the proposition that the ALJ "must separately assess periods of time that meet the 12-month durational requirement." ECF No. 11 at 6. But that is not exactly what *Smith* holds. *Smith* applied the general rule that an ALJ's rejection of a claimant's testimony for lack of credibility must be supported by clear and convincing reasons. *Smith*, 14 F.4th at 1113. There, the ALJ found the claimant's treatment records were inconsistent with his testimony regarding recent symptoms. The ALJ then rejected the claimant's *entire* testimony, including testimony regarding an earlier period of his alleged disability. *Id.* Though it was proper for the ALJ to reject the claimant's testimony on his *recent* symptoms due to cited inconsistencies, the Court found it improper to reject testimony on his *early* symptoms without similarly providing clear and convincing reasons. *Id.*

Here, Plaintiff argues that the ALJ failed to assess his ability to stand and/or walk before he had recovered from his surgical procedures. ECF No. 11 at 6. Plaintiff's first surgery occurred in June 2023, and his second surgery occurred in March 2024. AR 815, 690. The ALJ, however, did address these periods, and he noted that Plaintiff's medical providers did not require any specific treatment beyond medication to manage his impairments. *Id.* at 30. And unlike the claimant in *Smith*, Plaintiff does not identify any testimony in which he described specific functional limitations during either surgical recovery period. As the Commissioner states, the ALJ

reasonably determined that the evidence of Plaintiff's right foot impairments did not warrant identifying multiple RFCs. ECF No. 13 at 4.

The Commissioner further notes that Plaintiff merely summarizes his complaints of foot pain but does not point to any medical evidence documenting a significant decline in his functional capacity following either procedure. ECF No. 13 at 5. This Court is persuaded by the Commissioner's reasoning.

Additionally, for an ALJ to assess a distinct RFC for a given period, that period must independently satisfy the Act's 12-month durational requirement. 42 U.S.C. § 423(d)(1)(A). Plaintiff has not explained what exactly his alleged post-surgical limitations were or whether they lasted 12 months. Neither the record nor Plaintiff's own testimony indicate that his functional capacity meaningfully changed after either surgery, which supports the ALJ's determination of a single RFC. Because the ALJ reached a reasonable conclusion supported by inferences drawn from the record, this Court must uphold it. *Batson*, 359 F.3d at 1193.

**b. The ALJ Properly Assessed Plaintiff's Alleged Symptoms and Limitations**

Plaintiff next argues that the ALJ failed to state clear and convincing reasons for rejecting his alleged symptoms and limitations. This Court disagrees.

Plaintiff supports his argument that the ALJ improperly rejected his testimony by citing to *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). ECF No. 11 at 12. There, the Court emphasized that when rejecting a claimant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493 (citing *Reddick*, 157 F.3d at 722). The Court also noted that "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Id.* at 494.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 27. The ALJ then concluded, however, that Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms [was] not entirely consistent with the medical evidence and other evidence in the

record." *Id.* The ALJ specifically cites the portions of Plaintiff's testimony discussing "problems using his left upper extremity, being on his feet for walking and standing, bending, turning his neck, gripping and grasping, sitting, lifting, climbing stairs, kneeling, and reaching." *Id.*

Unlike the ALJ in *Brown-Hunter*, who simply stated she found the claimant's testimony not credible without explaining what evidence contradicted the testimony,[2] the ALJ here worked through each category of Plaintiff's testimony regarding his alleged limitations and identified specific evidence that discredited each allegation.

First, the ALJ compared Plaintiff's upper extremity complaints with relevant medical records. *Id.* at 28. The ALJ cited records spanning from 2022 to 2024 which generally reflected complete motor strength, normal range of motion, and intact motor function. *Id.* The ALJ found this medical evidence discredited Plaintiff's testimony that he had more severe limitations of his upper extremities, such as his left shoulder being "practically worthless." *Id.* at 27-28, 55; *see also* ECF No. 11 at 8.

The ALJ took the same approach for Plaintiff's lower extremity complaints. Before *and* after Plaintiff's first foot surgery in November 2023, the reviewed records indicated decreased sensation but complete motor strength and normal range of motion. AR 28, 584-85. After Plaintiff's second surgery in March 2024, subsequent exams in May, June, and November of that year consistently showed normal motor strength and range of motion. *Id.* at 29, 690, 827, 829, 910. These records led the ALJ to find that Plaintiff could stand and walk for two hours in an eight-hour workday, as opposed to the ten-minute maximum he testified to. *Id.* at 27, 29, 57; *see also* ECF No. 11 at 8.

As for Plaintiff's spinal complaints, a September 2024 exam showed decreased range of motion but intact sensation, normal lower extremity strength, and normal reflexes. AR 29, 905-06. Shortly after, studies of Plaintiff's lumbar spine and cervical spine came back normal. *Id.* at 29, 918-19. The ALJ acknowledged degenerative changes but specifically noted the absence of radiculopathy or nerve root impingement. *Id.* at 29. The ALJ found this evidence consistent with

[2] *Brown-Hunter*, 806 F.3d at 494.

an ability to perform light exertional work though Plaintiff testified to having more severe limitations. *Id.* at 27, 29; *see also* ECF No. 11 at 7-8.

Finally, the ALJ addressed Plaintiff's diabetes, gastroesophageal reflux disease, and obesity, finding that the relevant medical records further supported the ALJ's determination of a sedentary RFC despite Plaintiff's contrary testimony. AR 29-30; *see also* ECF No. 11 at 7-8. The ALJ did not simply summarize the medical evidence like the ALJ in *Brown-Hunter*. Instead, the ALJ here expressly tied evidence from the record to his conclusion that Plaintif's testimony regarding certain functional limitations was not credible. AR 28.

Because the ALJ identified the specific testimony he discounted and the specific evidence undermining each allegation, the rejection of Plaintiff's symptom testimony is supported by clear and convincing reasons. 42 U.S.C. § 405(g); *Ukolov*, 420 F.3d at 1004. Plaintiff has identified no legal error, nor has he shown that the ALJ's findings were unsupported by substantial evidence. Accordingly, the ALJ's factual findings are conclusive. *Stout*, 454 F.3d at 1052.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's request for reversal and remand (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of the Commissioner consistent with this Order and close this case.

DATED: September 14, 2026

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE